IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ST. LOUIS COUNTY, MISSOURI, ) | |
| ) | |
| Plaintiff, ) | Cause No. 4:20-CV-655  RLW |
| ) | |
| v. ) | |
| ) | |
| HOUSE OF PAIN GYM SERVICES, LLC, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**<u>PLAINTIFF ST. LOUIS COUNTY, MISSOURI'S REPLY IN SUPPORT OF AMENDED MOTION FOR TEMPORARY RESTRAINING ORDER AND, AS APPLICABLE, SUPPLEMENTAL OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

Resolution of the County's Amended Motion for TRO and Defendants' Motion to Dismiss boils down to whether the Court believes the County can promulgate and enforce its public health orders enacted in response to COVID-19. The County respectfully submits that it, like other local governments around the country, can, and that the wisdom of such orders is the province of the County—not Defendants and, except in the most extreme of cases, not the Court.

Like the gym in *SH3 Health Consulting*, Defendants are understandably frustrated by the current situation. Defendants want to open their gyms, generate revenue, and pay their employees. *The County wants this, too*. Public health orders such as the County's New Guidelines can, and oftentimes do, cause hardships. Since the outbreak of COVID-19, individuals have been temporarily limited in their activities and movement. Many businesses have been temporarily closed and some, like Defendants' gyms, should remain that way. But these hardships do not excuse Defendants' noncompliance with the County's New Guidelines. And they are not cause for the Court to effectively lift the County's carefully crafted (and continually evolving) public health order designed to protect the lives of the members of the community from COVID-19.

I.  **The County—Not Defendants and not the Court—Is Responsible for Crafting Public Health Orders in Response to COVID-19.**

Defendants challenge the wisdom of the County and its Director of the Department of Public Health, Dr. Emily Doucette, in presently precluding gyms from reopening while allowing other businesses to do so. Defendants, undoubtedly earnestly, believe that they can operate safely.

Defendants are effectively asking this Court to become the County's public health director, studying the continually evolving information regarding COVID-19 and deciding whether or not certain businesses or activities carry a heightened risk of spreading COVID-19 in the community. That is not a proper function for this Court. As Judge Clark recently observed, "[d]uring a public crisis, a court has no authority to determine the most effective measures for protecting the public – that 'judgment must be left to the governing state authorities.'" *SH3 Health Consulting, LLC v. Page*, No. 4:20-CV-00605 SRC, 2020 WL 2308444, at *6 (E.D. Mo. May 8, 2020) (quoting *In re Abbott*, 954 F.3d 772, 792 (5th Cir. 2020)). Judge Clark's well-reasoned opinion is grounded in the recent explications of the Eighth Circuit, which in turn drew upon the longstanding precedent of the Supreme Court. *See In re Rutledge*, 956 F.3d 1018, 1028 (8th Cir. 2020) ("In our analysis, we must take care not to 'usurp the functions of another branch of government,' such as by 'second-guess[ing] the state's policy choices in crafting emergency public health measures.'" (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905) and *In re Abbott*, 954 F.3d at 784)).

The County—specifically, Dr. Doucette—concluded that some businesses naturally create "certain types of congregation" that carry a "very high risk of transmission of COVID-19." (New Guidelines, § III.7.) Gyms and fitness centers are two such businesses. (*Id.*)

Defendants are free to disagree with Dr. Doucette's conclusions. The Court need not agree with them, either. But the determination of how best to respond to a public health crisis lies with the County and Dr. Doucette. Judicial intervention is appropriate only when the public health

2

order: (1) has no real or substantial relation to the protection of the public health, morals, or safety; or (2) is, "beyond all question, a plain, palpable invasion" of rights secured by the fundamental law." *In re Rutledge*, 956 F.3d at 1027. Neither can be said to be true in this case. *See, e.g.*, *id.* at 1027-32; *SH3 Health Consulting*, 2020 WL 2308444, at *4-10; *Frank v. City of St. Louis*, No. 4:20-CV-00597 SEP, 2020 WL 2116392, at *3-4 (E.D. Mo. May 2, 2020).

## II. Defendants Cannot Use the Mere Existence of the County's Public Nuisance Ordinance as a Shield for Violating the County's COVID-19 Public Health Order.

"It is well-established that equity may enjoin acts or conduct constituting a public nuisance." *State ex rel. Collet v. Scopel*, 316 S.W.2d 515, 521 (Mo. 1958); *see State ex rel. Collet v. Errington*, 317 S.W.2d 326 (Mo. 1958); *State ex rel. Schmitt v. Henson*, 2020 WL 1862001 (Mo. Ct. App. Apr. 14, 2020). Indeed, "it is not even a debatable question that injunction is a proper remedy for the abatement of a public nuisance, and this is true even though the party creating or continuing the public nuisance may also be liable to prosecution under the state or city laws." *City of Kansas City v. Mary Don Co.*, 606 S.W.2d 411, 415 (Mo. Ct. App. 1980).

The presence of a local ordinance prohibiting public nuisances thereunder and creating an administrative process for prosecuting such violations does not preclude a local government from seeking injunctive relief against a public nuisance. *See id.* ("[A] court of equity is not divested of jurisdiction to enjoin the maintenance of a public nuisance simply by reason of the fact that maintenance of the public nuisance also constitutes a violation of certain criminal or quasi-criminal statutes or ordinances."); *City of Sturgeon v. Wabash Railway Co.*, 17 S.W.2d 616, 619 (Mo. Ct. App. 1929); *see also Scopel*, 316 S.W.2d at 522 ("[W]e should not stay the strong arm of equity because there is no specific statutory authorization for injunctive relief . . . particularly where, as here, defendant has violated the applicable statutes openly, arrogantly and persistently.").

Defendants insist that the Court cannot enjoin their refusal to comply with the New

3

Guidelines because the County has a public nuisance ordinance. This contention is untenable. Defendants rely on *City of Independence v. DeWitt,* but, in that case, the City failed to argue that it had no adequate remedy at law and, on the contrary, the City's ordinance entitled the City to take immediate action to abate the public nuisance. 550 S.W.2d 840, 844-45 (Mo. Ct. App. 1977).

This gets to the crux of the issue: Defendants do not earnestly seek a declaration by the County Director of the Department of Public Works. Defendants are indisputably and openly violating the order (unlike the gym in *SH3 Health Consulting*, which complied with the order while also challenging it).[1] What Defendants actually desire—undue delay—is precisely why the County's ordinance is not an adequate remedy at law. The administrative process for abating public nuisances under the ordinance is a multi-month endeavor. The object of enforcing the New Guidelines is to help prevent the spread of the deadly, highly communicable COVID-19 virus in the County, which has already been disproportionately impacted compared to the rest of the State. *See SH3 Health Consulting, LLC,* 2020 WL 2308444, at *2. In short, the County's public nuisance ordinance provides no adequate remedy in this case. *See State ex rel. Missouri Highway & Transp. Comm'n v. Marcum Oil Co.*, 697 S.W.2d 580, 581 (Mo. Ct. App. 1985) (distinguishing *DeWitt* and upholding grant of injunctive relief); *Mary Don*, 606 S.W.2d at 415–16 ("Surely the City should not be rendered impotent to seek injunctive relief to protect the health, safety and welfare of its citizenry from ordinance violations when the supporting factual averments also lend themselves to being construed as pleading the maintenance of a public nuisance."). There is no exclusivity—in law or otherwise—that limits the County's right to seek equitable relief to enforce public health orders enacted during a public health crisis.

---

[1] Also unlike the gym in *SH3 Health Consulting*, F Four, its owner, and a gym member have sued Dr. Page, Dr. Doucette, and County Counselor Beth Orwick *individually*, *for monetary damages*, in connection with the County's public health orders. Case No. 4:20-cv-00656-RLW.

Defendants should not be permitted to violate the New Guidelines simply because the County has a public nuisance ordinance that is invoked in certain situations, such as an unkempt lawn. Neither Missouri law nor equity demand, much less permit, such an absurd result.

## CONCLUSION

Missouri law empowers local health authorities, such as the County Department of Public Health, to issue orders, such as the New Guidelines, "which may be necessary for the particular locality." Mo. Rev. Stat. § 192.290. No doubt recognizing the disproportionate impact of COVID-19 on different localities in the State, the State Department of Health and Senior Services did not declare there to be a "statewide pandemic," *see* 19 CSR 20-20.010(37); 19 CSR 20-20.050(3), instead leaving the task of promulgating more restrictive public health requirements to local public health officials. (*See* authorities cited in ECF No. 27, p. 15.).

The County seeks immediate injunctive relief to compel Defendants' compliance with the New Guidelines. The spread of COVID-19 must be slowed. Some businesses, such as Defendants' gyms, presently are believed to now pose too great of a risk to reopen. *This will not always be the case.* Defendants' open defiance of the New Guidelines, however, is lawless, *undermines* this goal, and *endangers* the health and safety of the community. The County prays this Court issue the immediate injunctive relief requested.

Finally, the County requests that the visitors of Defendants' gym be informed of their heightened exposure to COVID-19 and have COVID-19 testing made available to them at Defendants' expense. Notification can be accomplished, with adequate assurances, by Defendants. No one need be "forcibly" tested. Upon the Court's Order, the County will meet-and-confer with Defendants to craft the notification. But if Defendants' members wish to have testing, it is only equitable that Defendants—who acted in contravention to the public health order—pay for it.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: May 21, 2020        By:    /s/    Neal F. Perryman
Neal F. Perryman, #43057 (MO)
Michael L. Jente, #62980 (MO)
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101
Telephone: (314) 444-7661
Facsimile: (314) 612-7661
nperryman@lewisrice.com
mjente@lewisrice.com

and

**BETH ORWICK
COUNTY COUNSELOR**

Steven J. Capizzi, #56209 (MO)
Emily B. Allison, #67304 (MO)
Associate County Counselor
41 S. Central Avenue, Ninth Floor
Clayton, MO 63105
(314) 615-7042 (tel); (314) 615-3732 (fax)
scapizzi@stlouisco.com
eallison@stlouisco.com

*Attorneys for Plaintiff
St. Louis County, Missouri*

6