# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ST. LOUIS COUNTY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:20cv655 RLW |
| vs. | ) |
| | ) |
| HOUSE OF PAIN GYM SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 19). Plaintiff St. Louis County, Missouri ("St. Louis County" or "the County") filed its Opposition to Defendants' Motion to Dismiss and Supplemental Memorandum in Support of Amended Motion for Temporary Restraining Order (ECF No. 27) on May 20, 2020. The Court held a hearing on May 20, 2020. (ECF No. 31). On May 21, 2020, Defendants filed their Reply in Support of their Motion to Dismiss (ECF No. 33). On May 22, 2020, the County filed a Reply in Support of Amended Motion for Temporary Restraining Order and, as Applicable, Supplemental Opposition to Defendants' Motion to Dismiss. (ECF No. 36)

## BACKGROUND

On March 13, 2020, St. Louis County Executive Dr. Sam Page declared a state of emergency in St. Louis County, Missouri, in response to the COVID-19 public health crisis. (First Amended Petition of St. Louis County, Missouri for Temporary Restraining Order and Preliminary Injunctive Relief ("FAP"), ECF No. 9, ¶ 22). Pursuant to authority granted by, among other things, the Missouri Constitution, the Statutes of Missouri, St. Louis County's Charter, and certain Executive Orders, the St. Louis County Department of Public Health through its Director, issued an Amended Stay-at-Home Order, ("the Stay-at-Home Order"), as an

emergency measure to attempt to curtail the transmission of COVID-19 in St. Louis County. (FAP, ¶ 23). Among other things, the Stay-at-Home Order directs non-Essential Businesses, such as gyms, to reduce their operations significantly. (FAP, ¶ 2). On May 8, 2020, the St. Louis County Department of Public Health Director issued "Business and Individual Guidelines and Social Distancing and ReOpening" (the "New Guidelines"), which become effective May 18, 2020.

The New Guidelines begin easing restrictions on individuals and some businesses effective May 18, 2020. "Due to the very high risk of transmission of COVID-19 related to certain types of congregation to such facilities," gyms and fitness centers, among others, "are prohibited from operating or re-opening except with respect to the minimum necessary activities to maintain the value of [their] inventory, provide security, process payroll or employee benefits, or to facilitate employees of the business being able to continue to work remotely[.]" (New Guidelines., § III.7). While the New Guidelines ease restrictions, the New Guidelines still preclude the re-opening of certain businesses, such as gyms, that give rise to gatherings that carry a very high risk of transmission of COVID-19. (New Guidelines, § V.2).

Defendants operate two gyms in St. Louis County, Missouri. The County received complaints from the public that Defendants' gyms were operating in violation of the Stay-at-Home Order. The County notified Defendants on or about April 24, 2020, via USPS mail sent to House of Pain at 251 Chesterfield Industrial Boulevard in Chesterfield, Missouri. (FAP, ¶ 30). On May 6, 2020, additional notice was hand-delivered to Defendants at House of Pain at 12632 Dorsett Rd, Maryland Heights, Missouri, 63043, and to Defendants at House of Pain at 251 Chesterfield Industrial Blvd, Chesterfield, Missouri, 63005, by a St. Louis County police officer. (FAP, ¶ 31). On May 7, 2020, legal counsel for Defendants, W. Christopher McDonough, sent a

letter to the County, indicating that Defendants intended to continue operating the gyms in violation of the Stay-at-Home Order and the New Guidelines. (FAP, ¶ 34). In correspondence on May 9, 2020, the County notified Defendants, through their legal counsel, that if Defendants did not communicate their intent to bring the gyms into compliance with the Stay-at-Home Order by 5:00 p.m. on May 10, 2020, the County would take legal action. (FAP, ¶ 36). Defendants, through legal counsel W. Christopher McDonough, responded to the County's notice later that day, contending that the Stay-at-Home Order is "blatantly unconstitutional" and the County's efforts to bring Defendants into compliance with the Stay-at-Home Order constituted "tyrannical persecution." (FAP, ¶ 37).

The County filed this action and a Motion for TRO on May 11, 2020 in the Circuit Court of St. Louis County, Missouri. (ECF No. 8). On May 18, 2020, Defendants removed this action to this Court. (ECF No. 1). On May 19, 2020, Defendants filed the instant Motion to Dismiss. (ECF No. 19). On May 20, 2020, this Court held a telephonic hearing on Defendants' Motion to Dismiss and the County's Motion for Temporary Restraining Order. (ECF No. 31).

As indicated during the May 19, 2020, hearing, the Court addresses the Motion to Dismiss only to the extent necessary to determine whether the Court has jurisdiction to hear the County's Motion for Temporary Restraining Order. The Court holds the balance of the Motion to Dismiss in abeyance.

## DISCUSSION

### A. Nuisance

Defendants argue that this Court lacks jurisdiction because the Government has not exhausted its administrative remedies before bringing a nuisance claim against them. (ECF No. 20 at 23-24). Defendants note that St. Louis County has a nuisance ordinance, SLCRO §716.300

3

that provides a procedure and remedy for such nuisance. (ECF No. 33 at 9). Defendants contend that the County cannot obtain an injunction when "it adopted a detailed method to deal with an allegedly dangerous property absent allegations and proof to show such procedure does not provide an adequate remedy at law." (ECF No. 20 at 23 (citing *City of Indep. v. DeWitt*, 550 S.W.2d 840, 845 (Mo. App. 1977)). That is, Defendants argue that the County cannot obtain injunctive relief without exhausting the administrative procedures the County Council adopted by the specific nuisance ordinance. (ECF No. 33 at 14 (citing *Dewitt*, 55 S.W. 2d at 844-45)).

The Court holds that the County was permitted to pursue its common law public nuisance claim under the circumstances presented here. In this case, the County is pursuing a common law public nuisance action, not a violation of the County public nuisance ordinance. *See* FAP, ¶¶ 40-43; ECF No. 27 at 3-4. As a result, the County is not required to administratively exhaust its nuisance claim prior to filing suit against Defendants. In contrast, in the *DeWitt* case cited by Defendants, "[t]he City [did] not contend the property ... involved [was] a public nuisance at common law, but state[d] a public nuisance exist[ed] because of the violation of City ordinances." *City of Indep. v. DeWitt*, 550 S.W.2d 840, 844 (Mo. Ct. App. 1977). Thus, the *DeWitt* case does not support Defendants' contention that the County was required to administratively exhaust its claim before filing a common law nuisance action.

The Court further finds that, even though the County has a public nuisance ordinance it can still maintain a common law injunction action because the County does not have an adequate remedy at law to address the County's COVID-19 public health crisis through the County's public nuisance ordinance. If the County pursued shutting down Defendants' gyms through the County's public nuisance ordinance, then the County would have to abide by the ordinance's notice (allowing 30 days for Defendants to remedy the violation and then another 21 days' notice

for a hearing under SLCRO §§ 716.310.2 and 716.320.1), plus another 30 days after the order was posted on the structure before the St. Louis County Police Department could enforce the order (under SLCRO § 716.320.5). The County is in the "midst of an unprecedented health crisis occasioned by the worldwide COVID-19 pandemic." *In re Rutledge*, 956 F.3d 1018, 1023 (8th Cir. 2020); *see SH3 Health Consulting, LLC v. Page*, No. 4:20-CV-00605 SRC, 2020 WL 2308444, at *2 (E.D. Mo. May 8, 2020) ("The City and County account for over 55% of the cases and over 70% of the total deaths in Missouri.").

As discussed herein, the County has already sent Defendants repeated notices regarding their non-compliance with the County's public health orders. The County cannot wait over 80 days as required under the public nuisance ordinance for Defendants to shut down. *See* SLCRO §§ 716.310.2, 716.320.1, 716.320.5. The Court holds that the County did not have an adequate remedy at law under the public nuisance ordinance and therefore was permitted to seek injunctive relief. *City of Kansas City v. Mary Don Co.*, 606 S.W.2d 411, 415 (Mo. Ct. App. 1980) ("Surely the [County] should not be rendered impotent to seek injunctive relief to protect the health, safety and welfare of its citizenry from ordinance violations when the supporting factual averments also lend themselves to being construed as pleading the maintenance of a public nuisance."). The Court denies Defendants' motion to dismiss on this ground because the County was not required to exhaust administrative remedies under the nuisance ordinance prior to filing a lawsuit against Defendants.

### B. Primary-Jurisdiction Doctrine

"Primary[-]jurisdiction is a common-law doctrine that is utilized to coordinate judicial and administrative decision making." *Access Telecommunications v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998) (citing *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474,

5

476 (8th Cir. 1988)). The doctrine permits a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court. *Id.* (citing *Iowa Beef Processors, Inc. v. Illinois Cent. Gulf R.R. Co.*, 685 F.2d 255, 259 (8th Cir. 1982)). As recently decided by a Court in the Western District of Missouri:

> There are two primary reasons courts apply the primary-jurisdiction doctrine. First, "to obtain the benefit of an agency's expertise and experience ... 'in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion....'" *Access Telecomms.*, 137 F.3d at 608 (noting "'agencies created by Congress for regulating the subject matter should not be passed over'") (quoting *Far E. Conference v. United States*, 342 U.S. 570, 574 (1952)). Second, "to promote uniformity and consistency within the particular field of regulation." *Id.* (citation omitted). Thus, in deciding whether to apply the doctrine, courts focus on two questions: (1) "whether the issues raised in the case 'have been placed within the special competence of an administrative body,'" and (2) whether the court's disposition of the case could lead to inconsistent regulation of businesses in the same industry. *Sprint Spectrum L.P. v. AT&T Corp.*, 168 F. Supp. 2d 1095, 1098 (W.D. Mo. 2001) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. at 64).

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, No. 5:20-CV-06063-DGK, 2020 WL 2145350, at *8 (W.D. Mo. May 5, 2020). The Eighth Circuit has warned that the primary-jurisdiction doctrine should be "invoked sparingly, as it often results in added expense and delay." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (citing *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 477 (8th Cir. 1988))

Defendants contend that the Court should invoke the primary-jurisdiction doctrine to dismiss the County's First Amended Petition.[1] Defendants request the Court dismiss this action "for failure to follow its own public nuisance administrative procedures." (ECF No. 20 at 30). Defendants assert the Court should defer administration of this action to the Government's

---

[1] Notably, however, Defendants do not argue the primary-jurisdiction doctrine in their Reply. (ECF No. 33).

6

Public Works Director who has "special competence in the subject of public nuisances involving community safe, health and welfare." (ECF No. 20 at 30).

The Court holds that the primary-jurisdiction doctrine is inapplicable to the present cause of action. This case involves the interpretation of laws, orders, and rules. "Interpretation of such materials is well within the 'conventional experience of judges.'" *Alpharma, Inc.*, 411 F.3d at 939 (citing *Access Telecomm.*, 137 F.3d at 608). Indeed, this Court, as with other courts, is certainly capable of rendering a decision regarding whether Defendants are engaged in a public nuisance—either under common law or the County nuisance ordinance. *See State ex rel. Dresser Indus., Inc. v. Ruddy*, 592 S.W.2d 789 (Mo. 1980) (addressing common-law public nuisance claim in connection with rupture of dam at settling basin holding pond); *State ex rel. Schmitt v. Henson*, No. ED 107970, 2020 WL 1862001, at *1 (Mo. Ct. App. Apr. 14, 2020) (affirming district court's finding that a commercial swimming and diving facility constituted a public nuisance). Lastly, Defendants have not identified any particular expertise of the Public Works Director regarding implementation of the New Guidelines or Missouri public nuisance law. *See United States v. Rice*, 605 F.3d 473, 476 (8th Cir. 2010) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956) ("The [primary-jurisdiction] doctrine targets *issues,* and the district court's garnishment order did not decide any issue on which an administrative ruling would be appropriate, much less one suited to the 'expert and specialized knowledge of the [agency].'"). Therefore, the Court denies Defendants' Motion to Dismiss dismissal under the primary-jurisdiction doctrine.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 19) is **DENIED** as to the jurisdictional arguments related to nuisance and the primary-jurisdiction

doctrine. The Court finds that it has jurisdiction in this case. The Court holds the rest of the Motion to Dismiss (ECF No. 19) in abeyance.

Dated this 22nd day of May, 2020.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**