# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ST. LOUIS COUNTY, MISSOURI, | ) |
| | ) |
| Plaintiff, | ) Cause No. 4:20-CV-655 RLW |
| | ) |
| v. | ) |
| | ) |
| HOUSE OF PAIN GYM SERVICES, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## TEMPORARY RESTRAINING ORDER

This matter comes before the Court on the First Amended Motion for Temporary Restraining Order ("Motion") of Plaintiff St. Louis County ("St. Louis County," "the County," or "Plaintiff") against Defendants House of Pain Gym Services, LLC and F Four, LLC ("Defendants"). (ECF No. 14).[1] In its Motion, the County seeks to obtain immediate injunctive relief to enforce the County's stay-at-home order (the "Stay-at-Home Order") and "Business and Individual Guidelines and Social Distancing and Re-Opening" (the "New Guidelines"), enacted in response to the ongoing COVID-19 public health crisis. The Motion has been fully briefed. The Court heard argument on the Motion on Wednesday, May 20, 2020.

"To determine whether a temporary restraining order is warranted, the Court considers four factors: '1) the threat of irreparable harm to the moving party; 2) the state of the balance between the harm to the moving party and the harm that granting the injunction will inflict on the other parties; 3) the probability that the moving party will succeed on the merits; and 4) the public

---

[1] Defendants state in their Amended Notice of Removal that Defendant House of Pain Gym Services, LLC is improperly joined because it is a dormant legal entity, a shelf company, and it conducts no business of any kind. Defendants state that Defendant House of Pain Gym Services, LLC has no legal or practical involvement in the two gyms that Plaintiff seeks to comply with the Stay-at-Home Order and New Guidelines. *See* ECF No. 25.

interest.'" *City of Berkeley, Missouri v. Ferguson-Florissant Sch. Dist.*, No. 4:19CV168 RLW, 2019 WL 1558487, at *2 (E.D. Mo. Apr. 10, 2019) (quoting *Arthur J. Gallagher Risk Mgmt. Servs., Inc. v. Kinsey*, No. 4:08 CV 635 DDN, 2008 WL 2064797, at *1 (E.D. Mo. May 14, 2008) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

The Court concludes: (i) that the County has established a likelihood of success on the merits; (ii) that immediate and irreparable injury will occur in the absence of granting its requested relief; (iii) that the balance of the harms and the public interest favor granting immediate injunctive relief; and (iv) that the County has no adequate remedy at law.

Defendants operate two gyms located in St. Louis County. Defendants have been aware of the Stay-at-Home Order and New Guidelines.[2] The New Guidelines, which are currently in effect, require that certain businesses, such as Defendants' gyms, substantially limit their operations to only: "the minimum necessary activities to maintain the value of a business's inventory, provide security, process payroll or employee benefits, or to facilitate employees of the business being able to continue to work remotely." (New Guidelines, § III.7.) By operating their gyms in a manner open to the public, Defendants have violated the Stay-at-Home Order and continue to violate the New Guidelines.

In light of the ongoing COVID-19 public health crisis, the Court concludes that Defendants' continued operation of their gyms in this manner endangers the public health, safety, and welfare, and constitutes an unreasonable and unlawful use of Defendants' property. Further, Defendants' continued operation puts their members at a heightened risk of exposure to the COVID-19 virus, thereby putting them at increased risk of contracting the virus and unknowingly

---

[2] An extensive background of prior to and including this litigation is included in the Court's Memorandum and Order on Defendants' Motion to Dismiss (ECF No. 19), which also is entered on this date.

2

spreading the virus in the community. The Court also concludes that immediate injunctive relief is necessary to protect the County and the community from the danger caused by Defendants' continued unlawful use of their premises.

Defendants' contention—that the Stay-at-Home Order and the New Guidelines are unconstitutional and, therefore, Defendants need not comply with them—is not well-taken. *See, e.g., Jacobson v. Massachusetts*, 197 U.S. 11, 25-38 (1905); *In re Rutledge*, No. 20-1791, 956 F.3d 1018, 2020 WL 1933122, at *4-8 (8th Cir. Apr. 22, 2020); *SH3 Health Consulting LLC v. Page*, Case No. 4:20-CV-00605 SRC, 2020 WL 2308444, at *4-10 (E.D. Mo. May 8, 2020); *Frank v. City of St. Louis*, No. 4:20-CV-00597 SEP, --- F. Supp. 3d ----, 2020 WL 2116392, at *3 (E.D. Mo. May 2, 2020). Indeed, even Defendants admit that "the State has authority, and indeed a duty, to implement *reasonable* measures to stem the spread of COVID-19 and 'flatten the curve.'" (ECF No. 20 at 17 (emphasis in original)). Thus, Defendants have admitted that the County has the authority exercised under the New Guidelines.

Defendants, however, now assert that the County has exceeded that authority by issuing the New Guidelines that are "*clearly inconsistent* with the State Order" that allows for reopening of gyms. (ECF No. 20 at 19 (emphasis in original); *see also* ECF No. 20 at 32-35. Contrary to Defendants' argument, the Missouri Department of Health and Senior Services ("DHSS") has confirmed that local governments, like the County, maintain their authority to enact measures more stringent than the State's. (ECF No. 27 at 15 (citing the DHSS's April 27, 2020 Order ("Nothing herein shall limit the right of local authorities to make such further ordinances, rules, regulations, and orders not inconsistent with this Order which may be necessary for the particular locality under the jurisdiction of such local authorities."); State of Missouri Guidance and Frequently Asked Questions ("Local health authorities may enforce more restrictive public health requirements for

3

businesses or individuals.")).[3] That is, the Court holds that the County is expressly permitted to enact restrictions more stringent than in the DHSS's April 27, 2020 Order. Defendants' argument that a conflict with State law renders the New Guidelines unconstitutional is not well-founded. *See Givens v. Newsom*, No. 220CV00852JAMCKD, 2020 WL 2307224, at *9 (E.D. Cal. May 8, 2020). In keeping with this Court and the Eighth Circuit's precedent, the Court, however, holds that the New Guidelines are a valid exercise of the County's authority under Article VI, Section 18 of the Missouri Constitution and Mo. Rev. Stat. § 192.300, and apply to Defendants' gyms.

Defendants raise several due process and other constitutional arguments that have been previously been addressed in recent opinions. As discussed during the hearing, Defendants ignore the legal precedent from this Court and the Eighth Circuit regarding responses to the COVID-19 pandemic. *See In re Rutledge*, No. 20-1791, 956 F.3d 1018, 2020 WL 1933122 (8th Cir. Apr. 22, 2020); *SH3 Health Consulting LLC v. Page*, Case No. 4:20-CV-00605 SRC, 2020 WL 2308444 (E.D. Mo. May 8, 2020); *Frank v. City of St. Louis*, No. 4:20-CV-00597 SEP, --- F. Supp. 3d ----, 2020 WL 2116392 (E.D. Mo. May 2, 2020). Defendants contend that these opinions are irrelevant to this action because they were issued prior to the State opening and the under the old Stay-at-Home Order, which has been replaced by the New Guidelines. The Court holds that this is a distinction without a difference. The rationale behind District Courts' decisions in *SH3 Health Consulting LLC* and *Frank* were not limited to only the Stay-at-Home Order. And, the decision in *In re Rutledge* certainly was not limited to the County's Stay-at-Home Order. Rather, these

---

[3] Defendants point to 19 CSR 20-20.050(3) as a basis for its assertion that St. Louis County cannot enact more stringent restrictions (ECF No. 20 at 32-35), but that is not relevant because the Director of the DHSS has not declared a statewide pandemic in Missouri. *See, e.g.*, the DHSS's April 27, 2020 Order; the DHSS's April16, 2020 Order; the DHSS's April 3, 2020 Order).

Courts have recognized that the Court's review of the Stay-at-Home Orders other similar orders, and the New Guidelines is extremely restricted:

> These distinct features of the executive and judicial branches of government explain the limited role the courts play in reviewing executive-branch actions in a public-health crisis:
>
> [t]he bottom line is this: when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." Courts may ask whether the state's emergency measures lack basic exceptions for "extreme cases," and whether the measures are pretextual – that is, arbitrary or oppressive. At the same time, however, courts may not second-guess the wisdom or efficacy of the measures.

*SH3 Health Consulting, LLC v. Page*, No. 4:20-CV-00605 SRC, 2020 WL 2308444, at *5 (E.D. Mo. May 8, 2020) (quoting *In re Rutledge*, 2020 WL 1933122 at *4 (quoting *In re Abbott*, 954 F.3d at 784 (quoting *Jacobson*, 197 U.S. at 31, 38); *see also* ECF No. 36 at 2-3. Having recognized that St. Louis County has some of the highest COVID-19 rates of infection and death in the State, the Court finds it indisputable that the County's measures have a real or substantial relation to the current public health crisis. *See SH3 Health Consulting, LLC*, 2020 WL 2308444, at *2. The Court does not reiterate these arguments as they were well-addressed by the District Courts and the Eighth Circuit. Rather, based upon this binding and persuasive authority, the Court finds the County has provided a likelihood of success on the merits on Defendants' constitutional challenges to the New Guidelines, particularly the due process arguments.

The only relatively novel argument presented in Defendants' briefing is their Equal Protection challenge. To support an Equal Protection claim, Defendants must prove they were treated differently by the government than similarly situated persons and the different treatment was not rationally related to a legitimate government objective. *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S.

432, 439–40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Klinger v. Dep't of Corrections,* 31 F.3d 727, 731 (8th Cir.1994); *Bannum, Inc. v. City of St. Charles,* 2 F.3d 267, 271 (8th Cir.1993)). To demonstrate this, Defendants must prove similarity to other individuals or entities receiving favorable treatment. *Carter v. Arkansas,* 392 F.3d 965, 968–69 (8th Cir.2004); *Klinger,* 31 F.3d at 731. Defendants argue that "[w]hile the St. Louis County Government could conceivably adopt reasonable regulations applicable to the operation of gyms and other businesses - as long as they are evenly and fairly applied in a manner that does not violate the Equal Protection Clause and are consistent with the State Order – the Government's blanket order that gyms must close is clearly inconsistent with the State Order." (ECF No. 20 at 19). Defendants raise three theories about how the Equal Protection Clause is implicated by the New Guidelines as applied to them: (1) gyms elsewhere in Missouri, including neighboring counties, are allowed to open; (2) authorized professional sports team training sessions are allowed to occur; and (3) retail establishments offering little or no health benefits (*e.g.,* vape shops) are allowed to operate. The Court, however, holds that the County has provided valid reasons for treating these identified groups differently. First, gyms in other counties are not subject to St. Louis County Orders and reasonably are treated differently due to the higher instances of COVID-19 in St. Louis County and City. (ECF No. 27 at 20). Second, professional sports teams rationally are treated differently because their facilities are not accessible to the public and have medical staff on site. Consequently, professional sports team gyms are better able to care for the athletes, minimize risk of contagion, and prevent spread of the virus to the general public. (ECF No. 27 at 20-21). Third, retail establishments are not similarly situated to Defendants' gyms because retail customers "particularly in the current environment, enter a store, gather the items they need as quickly as possible, check out, and promptly leave." *Calvary Chapel of Bangor v. Mills,* No. 1:20-CV-00156-NT, 2020 WL 2310913,

at *8 (D. Me. May 9, 2020). In contrast, gym users are in a contained area for an extended period, breathing heavily, and sweating. *Cf. Gish v. Newsom*, No. EDCV20755JGBKKX, 2020 WL 1979970, at *6 (C.D. Cal. Apr. 23, 2020) ("An in-person religious gathering is not analogous to picking up groceries, food, or medicine, where people enter a building quickly, do not engage directly with others except at points of sale, and leave once the task is complete. Instead, it is more analogous to attending school or a concert—activities where people sit together in an enclosed space to share a communal experience."). Indeed, Dr. Doucette specifically concluded that some businesses naturally create "certain types of congregation" that carry a "very high risk of transmission of COVID-19," and gyms and fitness centers are two such businesses. (ECF No. 36 at 2). Therefore, the Court holds that the New Guidelines have provided a rational basis for treating gyms differently than retail establishments. Plaintiff likely will succeed on an Equal Protection challenge.

The issuance of this Temporary Restraining Order preserves the status quo—*i.e.*, upholds the enforceability of the Stay-at-Home Order and the New Guidelines, such that Defendants must comply with the presently effective New Guidelines—until the Court issues a decision regarding the County's Application for Preliminary and/or Permanent Injunction.

This Court has further considered whether a bond is required prior to issuance of this Temporary Restraining Order. "The amount of the bond rests within the sound discretion of the trial court." *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 2:12-CV-92-DDN, 2012 WL 6738489, at *7 (E.D. Mo. Dec. 31, 2012) (quoting *Stockslager v. Carroll Elec. Co-op. Corp.*, 528 F.2d 949, 951 (8th Cir.1976)). Having considered the facts and circumstances of this case, the Court concludes that no security shall be required.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants, and any person or entity in active concert or participation with Defendants, and all of their agents, servants, and employees are temporarily and immediately and enjoined and restrained from, directly or indirectly:

1. Operating their business located at 12632 Dorset Road, Maryland Heights, Missouri 63043 except as permitted by Section III.7. of the New Guidelines; and

2. Operating their business located at 251 Chesterfield Industrial Boulevard, Chesterfield, Missouri 63005 except as permitted by Section III.7. of the New Guidelines.

**IT IS FURTHER ORDERED** that Defendants shall maintain a complete record of every person who entered either location of their gym since Defendants opened to public use on May 4, 2020.[4]

**IT IS FURTHER ORDERED** that any violation of this Order will give rise to sanctions against the person or entity violating this Order.

**IT IS FURTHER ORDERED** that no bond shall be required to be posted by Plaintiff before this Order takes effect.

**IT IS FURTHER ORDERED** that this Order shall remain in full force and effect for fourteen (14) days or until the Court enters and Order regarding whether a preliminary and/or permanent injunction should issue.

---

[4] Plaintiff sought that Defendants pay the costs associated with COVID-19 testing for every individual identified on this list of individuals who had entered Defendants' gyms since May 4, 2020. *See* ECF No. 17. Plaintiff, however, has provided no medical basis for testing individuals who are asymptomatic. If Plaintiff can provide support that any of Defendants' gym patrons have tested positive for COVID-19, then the Court will reconsider this request.

**IT IS FURTHER ORDERED** that the Court shall hold a hearing on Plaintiff's Application for Preliminary Injunction on June 3, 2020, at 3:00 p.m. via video conference.

**IT IS FINALLY ORDERED** that Plaintiff shall file its Motion for Preliminary Injunction no later than **May 26, 2020**. Defendants shall file their Opposition to Plaintiff's Motion for Preliminary Injunction no later than **May 29, 2020**. Plaintiff shall file any reply no later than **June 1, 2020**.

**SO ORDERED** this 22nd day of May, 2020.

                                                         **RONNIE L. WHITE**
                                                         **UNITED STATES DISTRICT JUDGE**